**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| M Firas Joudeh, et al., | No. CV-17-02744-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| James F Beck, et al., | |
| Defendants. | |

Plaintiffs M. Firas Joudeh and Manal Alhakim accuse Defendants James Beck, Ginger Beck, and LUX Home Investments LLC ("LUX") of violating the federal Racketeer Influenced and Corrupt Organizations ("RICO") act through a scheme to defraud Plaintiffs in their purchase of a new home. Plaintiffs also raise claims of intentional infliction of emotional distress, unjust enrichment, conversion, and for a declaratory judgment. Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) for lack of personal jurisdiction and for failure to state a claim for which relief can be granted. (Doc. 19.) The motion is fully briefed and neither party requested oral argument. (Doc. 24.) For the following reasons, Defendants' motion is granted in part and denied in part.

**I. Background**

In early 2017, Plaintiffs agreed to buy a home that was being developed, marketed, and sold by CalAtlantic Homes. (Doc. 1 ¶¶ 14-15.) The closing date for the sale was set

for March 3, 2017, and Plaintiffs agreed to work with CalAtlantic Title, an affiliate of CalAtlantic Homes. (¶ 15.)

On March 1, 2017, Plaintiffs received an email from CalAtlantic Title with an attachment containing, among other things, wire instructions. (¶ 18.) The wire instructions contained CalAtlantic Title's logo, address, and phone number. (¶ 27.) On March 2, 2017, Plaintiffs went to CalAtlantic Title's office, signed the closing documents, and confirmed that the wire instructions were correct. (¶ 21.) On March 3, 2017, Plaintiffs wired $492,221.00 to purchase the home. (¶¶ 19, 22.) Later that same day, Plaintiffs were notified by CalAtlantic Title that the wired funds had not been received and that the closing date would be extended. (¶ 24.)

On March 7, 2017, Plaintiffs and CalAtlantic Title's escrow officer reviewed the wire instructions Plaintiffs' had received and determined that the named recipient and account holder was LUX, and that the ABA routing number and account number listed were not those of CalAtlantic Title's bank. (¶ 26.) CalAtlantic Title's employees were unable to explain why Plaintiffs received incorrect wire instructions. (¶ 28.) On March 8, 2017, CalAtlantic Homes cancelled the sales contract because Plaintiffs had insufficient funds to complete the transaction. (¶¶ 29-30.)

In an attempt to recover the misplaced funds, Plaintiffs contacted Regions Bank in Arkansas, the bank associated with the ABA routing number listed on the wire instructions. Regions Bank confirmed that the funds were received and deposited into LUX's account on March 3, 2017. (¶ 32.) After determining James Beck was the managing member of LUX, Plaintiffs requested the return of their funds. (¶¶ 33, 35.) During a telephone call on March 7, 2017, Beck informed Plaintiffs that he had received the wired funds, but that he no longer was in possession of the money because on March 6, 2017, he wired the funds to other bank accounts he was unable to access. (¶ 36.) Specifically, Beck had wired $165,000.00 to a Bank of Little Rock account also held in LUX's name, and $325,000.00 to a JP Morgan Chase Bank account held in the name of M&K Home Maintenance Services. (¶¶ 37-38). To date, Beck has refused to return the

funds and has offered a series of excuses, including that he himself was also defrauded as part of these transactions. (¶¶ 46, 47.)

**II. Discussion**

### A. Personal Jurisdiction

Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Where, as here, the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* In such cases, the court inquires only "into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). In determining whether the plaintiff has met this burden, uncontroverted allegations in the plaintiff's complaint must be taken as true, and "conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

The exercise of jurisdiction over a non-resident defendant requires that the defendant "have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945) (internal quotations and citation omitted). Personal jurisdiction may be general or specific. A court may assert general jurisdiction over foreign defendants "to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe C*o., 326 U.S. at 317). "Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal

quotation and citation omitted).

In specific jurisdiction cases, the relationship between the defendant and the forum state "must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Additionally, the requisite "minimum contacts" must be "with the forum State itself, not . . . with persons who reside there." *Id.* A court will exercise specific jurisdiction over a non-resident defendant only when three requirements are satisfied: (1) the defendant either "purposefully directs" its activities or "purposefully avails" itself of the benefits afforded by the forum's laws; (2) the claim "arises out of or relates to the defendant's forum-related activities;" and (3) the exercise of jurisdiction comports with fair play and substantial justice. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

Here, neither party contends that the Court has general personal jurisdiction over Defendants, and based on its independent review of the complaint and the parties' competing sworn statements the Court agrees. This case, therefore, presents a question of specific personal jurisdiction.

Defendants challenge only the first prong of this three-part test—whether Defendants purposefully availed themselves of the privilege of conducting activities in or purposefully directed their activities towards Arizona. (Doc. 19-2 at 3). Purposeful direction exists where the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017); *see Calder v. Jones*, 465 U.S. 783 (1984).

At the outset, the allegations in the complaint do not plausibly show any purposeful direction of relevant activities by Defendants to Arizona. In an effort to make a prima facie showing of personal jurisdiction, Plaintiffs cite several paragraphs from their complaint alleging that James Beck moved Plaintiffs' funds from the LUX account and refused Plaintiffs' requests to return the money. (Doc. 1 ¶¶ 41-47.) None of these

allegations, however, concern conduct aimed at the forum state. Instead, Plaintiffs cite to actions taken by Defendants in Arkansas, such as moving money from the LUX account to other non-Arizona bank accounts. (¶¶ 37-40.) These allegations are insufficient to demonstrate a prima facie case for specific jurisdiction.

Plaintiffs also argue, based on the allegations in the complaint, that "[i]t is more than reasonable to infer that Defendants involvement was required in order to have its specific bank information on the fraudulent wire instruction." (Doc. 24 at 9.) Plaintiffs argue that this inference is further supported "by Defendants subsequent transfers out of the account and cover up, including a death threat." (*Id.*) The Court disagrees, however, because the complaint's other allegations undermine such an inference. For example, Plaintiffs allege that they "received an email from CalAtlantic Title's escrow officer with an attachment containing all of the transaction closing documents required to be signed by Plaintiffs." (Doc. 1 ¶ 18.) Plaintiffs also allege that they "went to CalAtlantic Title's office . . . and confirmed that the wiring instructions which had been emailed to [Plaintiffs] on March 1, 2017 were correct." (¶ 21.) Absent from the complaint are allegations that Defendants sent their account information to Plaintiffs or conspired with CalAtlantic Title. (Doc. 1; Doc. 24 at 16-17.) To the contrary, Plaintiffs expressly allege that CalAtlantic Title sent the wire instructions to Plaintiff and verified their accuracy prior to the wire transfer.

Nor do the parties' competing sworn statements support the exercise of specific personal jurisdiction. In support of their motion to dismiss, Defendants submitted an affidavit which states "Lux has no office in Arizona, no bank accounts or other records in Arizona, nor is it authorized to do business in Arizona." (Doc. 20-1 at 1.) The affidavit also states that James Beck and Ginger Beck have not been to Arizona in decades and have not directed any of their activities toward the residents of Arizona. (*Id.*) In response, Plaintiffs offer Joudeh's sworn declaration. (Doc. 24.) Joudeh's declaration merely restates the allegations contained within the complaint and fails to offer any allegation that Defendants directed their conduct to the forum. (*Id.*) The Court therefore

grants Defendants' motion to dismiss for lack of personal jurisdiction.[1]

**B. Leave to Amend**

In the final sentence of their opposition brief, Plaintiffs alternatively request leave to amend should the Court conclude that Defendants' motion to dismiss is well taken. (Doc. 24 at 13.) Federal Rule of Civil Procedure 15(a)(2) requires the Court to "freely give leave when justice so requires." Leave need not be granted, however, "where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

Initially, the Court notes that Plaintiffs previously had an opportunity to amend the complaint but chose not to do so. Specifically, the Court issued an order on August 15, 2017, stating, in relevant part:

> 1. Before the filing of any motion to dismiss under Rule 12(b)(6), the parties must confer in good faith to determine whether the motion can be avoided. Defendant shall explain to Plaintiff the reasons why Defendant believes the complaint fails to state a claim for relief. The parties shall discuss whether the deficiencies identified by Defendant can be cured through an amended complaint. If the parties agree on this point, Plaintiff shall file an appropriate amended complaint in order to avoid the filing of an unnecessary motion to dismiss.
>
> *2. Notwithstanding Plaintiff's belief that the complaint is sufficient to state a claim for relief, or Defendant's belief that the complaint is not curable, if Plaintiff believes that a permissible amendment can cure some or all of the purported deficiencies identified by Defendant, Plaintiff is encouraged to file an amended complaint containing all further allegations Plaintiff could make. This would avoid the need for Plaintiff to seek leave to amend should the Court determine that the motion to dismiss is well taken.*

(Doc. 8 (emphasis added).) Consistent with this order, before Defendants filed their motion to dismiss the parties conferred about the issues Defendants intended to raise.

---

[1] Because the Court concludes, based on the current pleadings, that it lacks personal jurisdiction over Defendants, it will not pass judgment on the sufficiency of Plaintiffs' factual allegations under Rule 12(b)(6). That portion of Defendants' motion to dismiss will instead be denied as moot. In the event Plaintiffs amend their complaint to adequately allege a basis for personal jurisdiction, nothing in this order precludes Defendants from renewing their Rule 12(b)(6) motion if, after conferring with Plaintiffs, they continue to believe such a motion is warranted.

(Doc. 19-1.) Rather than amend their complaint to address the perceived defects, however, Plaintiffs chose to press their complaint and let the Court rule on the issues raised by Defendants based on the current pleadings.

By requesting leave to amend now, Plaintiffs have not acted consistent with the spirit or intent of the Court's prior order. If Plaintiffs can, in fact, allege additional facts that they believe will cure some or all of the defects Defendants have identified, their failure to do so after the parties met and conferred has needlessly delayed these proceedings and resulted in the unnecessary expenditure of resources, both by the parties and the Court. To be clear, the Court expects parties to take seriously their obligations to meet and confer and to make every effort to ensure the just, speedy, and inexpensive resolution of cases. The Court's August 15, 2017 order discouraging motions to dismiss was intended to head off precisely this situation by strongly encouraging Plaintiffs to make all further allegations they could make prior to Defendants moving to dismiss, either to avoid an unnecessary motion to dismiss or to ensure that the parties brief—and the Court rules—on only one such motion.

Plaintiffs' request for leave to amend also violates Local Rule 15.1, which requires a party who moves for leave to amend to "attach a copy of the proposed amended pleading as an exhibit to the motion, which must indicate in what respect it differs from the pleading which it amends[.]" Plaintiffs did not attach a copy of the proposed amended complaint to their response memorandum, nor have they otherwise explained in their response brief what specific supporting allegations they would make to cure the defects identified above. (Doc. 24 at 13.) For all these reasons, Plaintiffs' request for leave to amend is denied without prejudice. Plaintiffs may, however, renew their request for leave to amend if they believe they can allege facts curing the defects identified in this order. If they choose to renew their request, they must do so in a manner that complies Local Rule 15.1.

**IT IS ORDERED** that Defendants' motion to dismiss for lack of personal jurisdiction (Doc. 19) is **GRANTED**. Defendants' motion to dismiss for failure to state a

claim is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs may, if they choose, file a renewed motion for leave to amend that complies with LRCiv 15.1 by no later than **July 23, 2018.** The Clerk of the Court is directed to terminate this case without further order of the Court on **July 24, 2018** if Plaintiffs do not file a renewed motion for leave to amend within the timeframe specified herein.

Dated this 10th day of July, 2018.

Douglas L. Rayes
United States District Judge